DECISION
{¶ 1} Relator, James Kincaid ("Kincaid"), has filed an original action in mandamus requesting this court issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his application for permanent total disability compensation ("PTD") under R.C.4123.58(C), and to issue an order that grants said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate concluded that: (1) the reports of Drs. Calloway and Campole do not support an award of PTD compensation because each physician opined that relator has near normal corrected use of his eyes; and (2) the doctrine of collateral estoppel did not compel the commission to enter an award of statutory PTD because the award of permanent partial disability ("PPD") to relator was not administratively challenged.
 {¶ 3} Relator has filed objections to the magistrate's decision as follows:
IT IS AN ABUSE OF DISCRETION FOR THE INDUSTRIAL COMMISSION TO DENY AN APPLICATION FOR STATUTORY PERMANENT TOTAL DISABILITY DUE TO LOSS OF VISION WHEN THE COMMISSION HAS PREVIOUSLY FOUND THE CLAIMANT TO HAVE INCURRED A 100% BILATERAL, TOTAL LOSS OF SIGHT, (BOTH EYES) PURSUANT TO OHIO REV. CODE, SECTION 4123.57(B).
A. IT IS AN ABUSE OF DISCRETION FOR THE COMMISSION TO DENY SUCH AN APPLICATION WHERE THERE IS NO FINDING OF SUBSEQUENT CORRECTIVE MEASURES; AND, WHERE THE ONLY MEDICAL EVIDENCE SUPPORTS TOTAL LOSS AND TOTAL DISABILITY.
B. THE FAILURE OF THE COMMISSION TO APPLY THE PRINCIPLES OF COLLATERAL ESTOPPEL IN THIS MATTER WAS AN ABUSE OF DISCRETION.
 {¶ 4} No party submitted objections to the magistrate's findings of fact, and we adopt those findings as our own. Nevertheless, a brief recounting of the relevant facts is necessary for our analysis.
 {¶ 5} Relator was employed by respondent Allen Refractories Co., a state-fund employer. On February 8, 1984, relator sustained a work-related injury, resulting in an industrial claim allowed for: "fractured left cheek bone; lacerated left cheek; cerebral concussion; periodic loss of bilateral vision." On January 23, 2002, relator was awarded 90 percent loss of vision in both eyes.
 {¶ 6} Relator subsequently moved for additional compensation under R.C. 4123.57(B) for the permanent partial loss of sight of both eyes. His motion was supported by a report, dated October 7, 2003, from Michael E. Campole, D.O., who opined that due to relator's headaches, which relator stated were sometimes accompanied by loss of central vision in both eyes, relator "should be given 100% visual disability at this point in time, which is an additional 10% in each eye." (Supplemental joint stipulation of evidence, report of Dr. Campole, Ex. 7.)
 {¶ 7} At the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by George F. Calloway, Jr., M.D. In his report dated January 7, 2004, Dr. Calloway opined:
* * * This 74-year-old male states that while working he was struck in the left facial area by a piece of catwalk on February 8, 1984. He states that he sustained facial trauma and a concussion as a result of this injury. Since that time he claims that he has had intermittent vision loss which he describes astotally unable to see anything lasting up to 25-45 minutes perepisode. He cannot predict when these episodes will happen and he claims that they happen at various times of the day and evening and that he has up to nine of these episodes per week.
He states again that with each episode there is a significant loss of central vision and sometimes peripheral vision as well. * * *
* * *
* * * While he shows no actual evidence of ocular trauma, he states that his vision problems began as result of his injury and have persisted. The only objective finding that he has is a macular hole. There is no way to determine how long ago this hole was present but this may in fact be a recent finding that is probably not related to his regional injury or his subsequent complaints. Mr. Kincaid is claiming an intermittent loss of vision. There is no way to quantify this or document this other than his claim. If in fact his claim is factual then he has times when he has a total impairment of his visual system both from a visual field standpoint as well as a visual acuity standpoint. * * * Based on this, when he is having these episodes his impairment to the visual field is 100% which would correspond to an 85% impairment of the whole person. * * * There is no physical evidence to suggest that there is in fact visual field or visual acuity loss just as there is no physical evidence to dispute the claimed loss. Based on Mr. Kincaid's claim, I would have to say that this injury is the result of his accident as he had [no] symptoms prior to the injury. The percentage of loss of vision per the Fifth Edition AMA Guidelines would be 100% impairment of the visual system, which would correspond to an 85% whole person impairment. I would like to point out that this is only an intermittent complaint but that since he cannot predict or control the timing or the frequency of these attacks, in effect he is disabled at all times because he could be disabled at any time.
While I do not feel totally comfortable with the claim as all physical evidence is lacking, the numbers that I have given are based on the Fifth Edition AMA Guidelines, assuming that the information provided to me was truthful.
(Joint stipulation of evidence, report of Dr. George F. Calloway, Ex. 3.) (Emphasis added.)
 {¶ 8} Following a hearing on May 10, 2004, a district hearing officer ("DHO") issued an order finding relator had 100 percent bilateral, total loss of vision in both eyes. That order, which was based on the reports of Drs. Campole and Calloway, was not administratively appealed.
 {¶ 9} On June 7, 2004, relator moved for statutory PTD compensation under R.C. 4123.58(C), relying exclusively on the "prior decisions of the Ohio Industrial Commission." (Joint stipulation of evidence, Motion filed by relator, Ex. 2.) On July 21, 2004, a staff hearing officer ("SHO") issued an order denying relator's motion for statutory PTD compensation. (Joint stipulation of evidence, Industrial Commission SHO Order dated July 21, 2004, Ex. 4 ("Ex. 4").) The SHO explained that the report of Dr. Calloway, who opined that relator had near normal corrected vision in each eye when not experiencing an episode, served as the basis for the decision to deny relator PTD compensation. The SHO cited State ex rel. Szatkowski v. Indus.Comm. (1998), 39 Ohio St.3d 320, in which the court held that the claimant was not entitled to statutory PTD because he had "not lost his vision to the same extent as if his eyes had been enucleated." Id. at 322. Thus, the SHO reasoned, "because of the partial/substantial use of near normal corrected vision in each eye, the injured worker does not qualify for an award under Section 4123.58(C) Ohio Revised Code." (Ex. 4.)
 {¶ 10} As noted, the magistrate concluded that the commission did not abuse its discretion when it denied relator's application for PTD. In reaching that conclusion, the magistrate observed relator's motion relied exclusively upon the prior decisions of the commission awarding PPD compensation, and did not cite any reliance upon the reports of Drs. Campole and Calloway, both of which, the magistrate found did not support the award of PTD compensation because each physician opined that relator had only intermittent vision loss. Thus, the commission's previous award of PPD did not compel the commission to award PTD compensation. The magistrate further determined that the doctrine of collateral estoppel did not apply "because the employer here is a state-fund employer, [and] an award of statutory PTD would necessarily be the burden of the state insurance fund, rather than the employer of record who failed to challenge the R.C. 4123.57(B) award." Id. at 10-11. He explained that here, "the real party in interest against whom relator seeks to impose the doctrine of collateral estoppel is the state insurance fund," which "could not, as a matter of law, have obtained review" of the DHO's order of May 10, 2004. Id. at 10. Thus, according to the magistrate, this case falls into an exception to the general rule of issue preclusion because "it would be inequitable to impose issue preclusion against the state insurance fund for statutory PTD based upon the DHO's finding." Id. at 11.
 {¶ 11} Relator contends the "medical evidence on file supported statutory P.T.D." (Objections of Relator filed June 3, 2005, at 6.) He asserts the SHO erroneously relied uponSzatkowski, supra, in denying relator's motion for PTD compensation. A close read of the SHO's order, however, discloses that relator appears to have misread the order. The SHO cited toSzatkowski for the proposition that in order to qualify for PTD compensation, relator was required to show, at a minimum, he suffered a "total loss of use" of both of his eyes. In other words, he "lost his vision to the same extent as if his eyes had been enucleated." Szatkowski, supra, at 322. Based on the fact that Dr. Calloway found that relator has near normal corrected vision when not experiencing an episode, the SHO concluded that relator had not established a permanent loss of vision under R.C.4123.58(C).
 {¶ 12} To demonstrate that a clear legal right to relief exists, relator must show that the commission abused its discretion, which "has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18, 20, citing State ex rel. Elliott v. Indus.Comm. (1986), 26 Ohio St.3d 76, 79; State ex rel. Milburn v.Indus. Comm. (1986), 26 Ohio St.3d 119, 121; State ex rel.Rouch v. Eagle Tool Machine Co. (1986), 26 Ohio St.3d 197,198. In this case, the nine episodes a week during which relator claims to lose his vision (with each episode lasting between 25 and 45 minutes), amounts to a total loss of vision of approximately four to seven hours per week. Though we do not mean to minimize relator's suffering, such is not a total loss of use of his eyes. Accordingly, we agree with the magistrate's conclusion that Dr. Calloway's report does not support an award for statutory PTD compensation, and therefore, constituted some evidence relied upon by the commission in denying relator's motion.
 {¶ 13} Relator also asserts that he is entitled to PTD compensation under R.C. 4123.58(C) as a matter of law because he was awarded PPD compensation pursuant to R.C. 4123.57(B). He argues that because there was no administrative appeal of his award of PPD compensation, the doctrine of collateral estoppel operates to compel an award of PTD. We disagree.
 {¶ 14} PTD compensation is designed to compensate the claimant for impairment of earning capacity. State ex rel.General Motors Corp. v. Indus. Comm. (1975), 42 Ohio St.2d 278,282. Conversely, PPD award is akin to a damage award, and is not predicated on a finding that the injury impacts the claimant's ability to perform sustained remunerative employment. State exrel. Holman v. Longfellow Restaurant (1996), 76 Ohio St.3d 44,47. In light of this distinct difference, "[t]he commission's previous finding of PPD is not res judicata in a PTD determination." State ex rel. Taylor v. Indus. Comm., Franklin App. No. 02AP-684, 2003-Ohio-1271, at ¶ 4, quoting State ex rel.General Motors Corp. v. Indus. Comm. (1975), 42 Ohio St.2d 278,282. See, also, State ex rel. S E Johnson Cos. v. Indus. Comm.,
Franklin App. No. 04AP-634, 2005-Ohio-1536, at ¶ 4, quoting Ohio Adm. Code 4121-3-34(D)(3)(f) ("The adjudicator [of PTD] shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for permanent and total disability.").
 {¶ 15} Based on the above, the doctrine of collateral estoppel has no application herein, and the fact relator's award of PPD was not administratively appealed is of no consequence. Thus, while we agree with the magistrate's ultimate conclusion on this point, we do so for a different reason. It should be noted, however, that we express no opinion as to the magistrate's legal reasoning.
 {¶ 16} Following an independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and we adopt them as our own. For the reasons set forth in this decision, we adopt the magistrate's conclusions of law that determined Dr. Calloway's report did not support a finding of PTD compensation. With respect to the magistrate's conclusions of law regarding the doctrine of collateral estoppel, we substitute the same with our own as set forth herein. Accordingly, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Klatt, P.J., and Brown, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : James Kincaid, : :
Relator, : v. : No. 04AP-1345 :
Allen Refractories Co. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on May 23, 2005 Koltak Gibson, L.L.P., and Ronald J. Koltak, for relator.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 17} In this original action, relator, James Kincaid, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion for statutory permanent total disability ("PTD") compensation under R.C. 4123.58(C), and to enter an order granting said compensation.
Findings of Fact:
 {¶ 18} 1. On February 8, 1984, relator sustained an industrial injury while employed with respondent Allen Refractories Co., a state-fund employer. The industrial claim is allowed for: "fractured left cheek bone; lacerated left cheek; cerebral concussion; periodic loss of bilateral vision," and is assigned claim number 84-3012.
 {¶ 19} 2. On October 22, 2003, relator moved for additional compensation under R.C. 4123.57(B) for the permanent partial loss of sight of both eyes. Apparently, relator's motion was supported by a report, dated October 7, 2003, from Michael E. Campole, D.O., stating:
* * * His headaches have increased to the point where they are pretty much daily, as noted in prior records per Dr. Nahid Dadmehr. He has given him 90% impairment and 85% of the whole visual system from his initial injury. At that point his headaches were less frequent, about 7-8 a week. Currently, he is having multiple headaches every day. Sometimes with these headaches he complains of loss of central vision in both eyes. This lasts about 25-30 minutes. His loss of peripheral vision which seems to be substantially longer. [Sic.] Since his headaches have increased and the blindness accompanies them has increased as well. [Sic.] I think he should be given 100% visual disability at this point in time, which is an additional 10% in each eye.
 {¶ 20} 3. On January 7, 2004, relator was examined at the request of the Ohio Bureau of Workers' Compensation ("bureau") by George F. Calloway, Jr., M.D. Dr. Calloway reported:
History of Present Injury: I was asked to perform an evaluation on Mr. James D. Kincaid to determine whether in my opinion his alleged loss of vision is a direct and proximate result of the injury or disease. Mr. Kincaid presented for this evaluation on January 7, 2004. This 74-year-old male states that while working he was struck in the left facial area by a piece of catwalk on February 8, 1984. He states that he sustained facial trauma and a concussion as a result of this injury. Since that time he claims that he has had intermittent vision loss which he describes as totally unable to see anything lasting up to 25-45 minutes per episode. He cannot predict when these episodes will happen and he claims that they happen at various times of the day and evening and that he has up to nine of these episodes per week. He states again that with each episode there is a significant loss of central vision and sometimes peripheral vision as well. He denies any prior ocular problems. He states that at the time of this examination that one of his sessions has just concluded.
Physical Examination: Ocular examination revealed a corrected visual acuity of 20/80 in the right eye and 20/60 in the left. External examination: Showed the pupils to be equal, round, and reactive to light and near. No afferent pupillary defect was noted in either eye. Muscle balance was normal for distance and near. Extraocular muscle movements revealed full ductions and versions. Intraocular pressures were 21 mmHg in the right eye and 23 mmHg in the left eye as measured by applanation tonometry. Slit-lamp examination revealed noninjected conjunctiva and clear cornea. Anterior chamber was deep and clear. The iris and pupil were normal. The lens revealed mild nucleosclerotic cataractous change but otherwise normal. Biomicroscopy of the vitreous was normal and the vitreous and slit-lamp examination findings were bilateral. On dilated fundus examination of the right eye, the disc was clear with cup-disc ratio of 0.3, sharp margin. The retinal vessels were of normal caliber. The macula reveled retinal pigment epithelial changes with a macular hole present. The periphery was intact. In the left eye only mild macular or retinal pigment epithelial changes were noted; remainder of the examination was normal.
Diagnoses: Concussion without coma, open wound to the lip on the left side, closed fracture of the malar and maxillary bones on the left side, and unqualified visual loss bilaterally.
Discussion, Recommendation, and Prognosis: Mr. Kincaid represents a very interesting and somewhat complicated case. While he shows no actual evidence of ocular trauma, he states that his vision problems began as result of his injury and have persisted. The only objective finding that he has is a macular hole. There is no way to determine how long ago this hole was present but this may in fact be a recent finding that is probably not related to his regional injury or his subsequent complaints. Mr. Kincaid is claiming an intermittent loss of vision. There is no way to quantify this or document this other than his claim. If in fact his claim is factual then he has times when he has a total impairment of his visual system both from a visual field standpoint as well as a visual acuity standpoint. I took the liberty of reviewing some of his accompanying records and he has given other examiners an indication of the visual acuity of 20/200 during his episodes but he tells me that his vision is at the level of hand motion to light perception only which would be a profound, almost total, loss of vision in visual field. Based on this, when he is having these episodes his impairment to the visual field is 100% which would correspond to an 85% impairment of the whole person. The specific questions asked are in my medical opinion is alleged vision loss is a direct and proximate result of the injury or disease. There is no physical evidence to suggest that there is in fact visual field or visual acuity loss just as there is no physical evidence to dispute the claimed loss. Based on Mr. Kincaid's claim, I would have to say that this injury is the result of his accident as he had [no] symptoms prior to the injury. The percentage of loss of vision per the Fifth Edition AMA Guidelines would be 100% impairment of the visual system, which would correspond to an 85% whole person impairment. I would like to point out that this is only an intermittent complaint but that since he cannot predict or control the timing or the frequency of these attacks, in effect he is disabled at all times because he could be disabled at any time.
While I do not feel totally comfortable with the claim as all physical evidence is lacking, the numbers that I have given are based on the Fifth Edition AMA Guidelines, assuming that the information provided to me was truthful.
 {¶ 21} 4. Following a May 10, 2004 hearing, a district hearing officer ("DHO") issued an order stating:
It is the order of the District Hearing Officer that the C-86 Motion filed by Injured Worker on 10/22/2003 is granted to the extent of this order.
At this time, the injured worker is found to now have 100% bilateral, total loss of sight (both eyes). Therefore, the appropriate remaining balance due (up to 100% for both eyes) per Ohio Revised Code 4123.57(B) is to be paid, from date last paid, up to or until a total (100%) award, per statute, is paid herein. It is noted that the injured worker has already received a90% vision, loss of use award to date.
This order is based on the reports of Drs. Campole and Calloway.
(Emphasis sic.)
 {¶ 22} 5. Apparently, the May 10, 2004 DHO order was not administratively appealed.
 {¶ 23} 6. On June 7, 2004, relator moved for statutory PTD compensation under R.C. 4123.58(C), citing the prior decisions of the commission granting him R.C. 4123.57(B) compensation.
 {¶ 24} 7. Following a July 21, 2004 hearing, a staff hearing officer ("SHO") issued an order denying relator's motion for statutory PTD compensation. The SHO's order states:
It is the finding of the Staff Hearing Officer that the injured worker's C-86 Motion filed 06/07/2004, is denied. Statutory permanent and total disability compensation is denied as the injured worker's impaired vision does not rise to the level that he is qualified for this type of award under Section 4123.58(c). The evidence on file indicates the injured worker has not sustained a "loss of use" for both eyes.
The basis for this decision is the 01/07/2004 narrative report from Dr. George Calloway, Jr. Dr. Calloway opined that the injured worker experiences intermittent loss of vision from episodes lasting from 25/45 minutes. However, the injured worker has corrected visual activity equal to 20/80 in the right eye and 20/60 in the left eye when not having one of the episodes. The physical/visual condition of the injured worker does not support the awarding of "Statutory" permanent total disability. The case of State, ex rel. Szatkowski v. Industrial Commission (1998),30 Ohio St. 3d 320 supports the finding in this order. Although, the injured worker has never received surgical correction as in the Szatkowski case, he often times has near normal vision in each eye giving him "some" use of the eyes. The injured worker was granted use (loss of vision) under Section 4123.57(B) Ohio Revised Code, however, the requirements for Section 4123.57(B) are different than 4123.58(C) Ohio Revised Code. Therefore, because of the partial/substantial use of near normal corrected vision in each eye, the injured worker does not qualify for an award under Section 4123.58(C) Ohio Revised Code.
 {¶ 25} 8. Relator moved for reconsideration of the SHO order of July 21, 2004. On September 21, 2004, the three member commission denied reconsideration.
 {¶ 26} 9. On December 17, 2004, relator, James Kincaid, filed this mandamus action.
Conclusions of Law:
 {¶ 27} The issue is whether the doctrine of collateral estoppel or issue preclusion compels the commission to enter an award of statutory PTD. Finding that the doctrine does not compel an award of statutory PTD, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 28} R.C. 4123.57(B) provides for the payment of weekly compensation for the loss of enumerated body parts and for loss of sight and hearing. R.C. 4123.57(B) states in part:
For the loss of the sight of an eye, one hundred twenty-five weeks.
For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.
 {¶ 29} R.C. 4123.58(C) provides for so-called statutory PTD compensation. It states:
The loss or loss of use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof, constitutes total and permanent disability, to be compensated according to this section. * * *
 {¶ 30} In State ex rel. Szatkowski v. Indus. Comm. (1988),39 Ohio St.3d 320, the court observed that R.C. 4123.58(C) does not use the term "loss of uncorrected vision" as that term is found in former R.C. 4123.57(C) (now R.C. 4123.57[B]). InSzatkowski, the claimant had a loss of uncorrected vision but contact lenses had restored a significant amount of sight. The court held that the claimant was not entitled to statutory PTD because he had "not lost his vision to the same extent as if his eyes had been enucleated." Id. at 322.
 {¶ 31} Thus, Szatkowski presents a test for determining whether a statutory PTD applicant is entitled to an award when the claim is premised upon loss or loss of use of both eyes. It might be argued that the test has been expanded under State exrel. Alcoa Bldg. Products v. Indus. Comm., 102 Ohio St.3d 341,2004-Ohio-3166 (the Supreme Court of Ohio adopted the "all practical intents and purposes" test used by the Pennsylvania courts). However, that argument or issue is not before this court in this action.
 {¶ 32} Citing State ex rel. Trautwein v. Sorgenfrei (1979),58 Ohio St.2d 493, relator claims that the DHO's finding in support of R.C. 4123.57(B) compensation that relator has "100% bilateral, total loss of sight (both eyes)" estops the commission from entering a finding to the contrary in the adjudication of relator's motion for statutory PTD compensation. That is, relator claims that the doctrine of collateral estoppel or issue preclusion, as set forth in Trautwein, compels the commission to find that relator has lost the use of both eyes for purposes of statutory PTD. The magistrate disagrees.
 {¶ 33} The syllabus of Trautwein states:
A point of law or a fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies. The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action. (Whitehead v. Genl. Tel. Co.,20 Ohio St. 2d 108, paragraph two of the syllabus approved and followed.)
 {¶ 34} In Trautwein, the court explained:
* * * The doctrine of res judicata is separated into two distinct principles as explained by this court in Whitehead v.Genl. Tel. Co. (1969), 20 Ohio St. 2d 108, at page 112:
"The doctrine of res judicata involves two basic concepts.Norwood v. McDonald (1943), 142 Ohio St. 299[.] * * * First, it refers to the effect a judgment in a prior action has in a second action based upon the same cause of action. The Restatement of the Law, Judgments, Section 45, uses the terms `merger' and `bar'. If the plaintiff in the prior action is successful, the entire cause of action is `merged' in the judgment. The merger means that a successful plaintiff cannot recover again on the same cause of action, although he may maintain an action to enforce the judgment. If the defendant is successful in the prior action, the plaintiff is `barred' from suing, in a subsequent action, on the same cause of action. The bar aspect of the doctrine of res judicata is a [sic] sometimes called `estoppel by judgment.' Restatement of the Law, Judgments, Section 45, comment (b).
"The second aspect of the doctrine of res judicata is `collateral estoppel.' While the merger and bar aspects of resjudicata have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. Restatement of the Law, Judgments, Section 45, comment (c), and Section 68 (2); Cromwellv. County of Sac (1876), 94 U.S. 351. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit."
Id. at 494-495. (Emphasis sic.)
 {¶ 35} Significantly, in his motion for statutory PTD compensation, relator did not cite reliance upon the reports of Drs. Campole and Calloway which was the evidence relied upon by the DHO to support R.C. 4123.57(B) compensation. Rather, relator's motion cited to the prior decisions of the commission awarding R.C. 4123.57(B) compensation.
 {¶ 36} In effect, relator's June 7, 2004 motion for statutory PTD compensation asks the commission to ignore the reports of Drs. Campole and Calloway and to enter an award of statutory PTD based solely upon the DHO's finding of "100% bilateral, total loss of sight."
 {¶ 37} Relator's attempt to separate the DHO's finding from the evidence he relied upon is the fundamental flaw in relator's claim under collateral estoppel or issue preclusion.
 {¶ 38} Clearly, Dr. Calloway's report fails to support an award for statutory PTD. Dr. Calloway described "intermittent vision loss * * * lasting up to 25-45 minutes per episode." Relator told Dr. Calloway that he experiences up to nine of the episodes per week. In each episode, there is significant loss of central vision and sometimes peripheral vision loss as well. When relator is not having an episode, he has corrected visual acuity of 20/80 in the right eye and 20/60 in the left eye.
 {¶ 39} Clearly, Dr. Campole's report fails to support an award for statutory PTD. Dr. Campole writes: "[s]omtimes with these headaches he complains of loss of central vision in both eyes. This lasts about 25-30 minutes. His loss of peripheral vision which seems to be substantially longer."
 {¶ 40} Relator does not claim that the reports of Drs. Campole and Calloway support statutory PTD. What relator claims is that the DHO's finding, supposedly premised upon those reports, mandates a PTD award under the collateral estoppel doctrine.
 {¶ 41} In Ft. Frye Teachers Assn., OEA/NEA v. State Emp.Relations Bd. (1998), 81 Ohio St.3d 392, the court, citingTrautwein, describes the doctrine:
The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. * * *
Id. at 395.
 {¶ 42} The proceeding before the DHO at the May 10, 2004 hearing was uncontested. At the time of the hearing, relator had already received compensation for 90 percent vision loss. Thus, only compensation for an additional ten percent vision loss was at stake. The DHO's decision was not administratively appealed. Presumably, the employer of record has not and cannot bring a mandamus action to challenge whether R.C. 4123.57(B) compensation for 100 percent vision loss is supported by some evidence.
 {¶ 43} In contrast to what was at stake before the DHO on May 10, 2004, an award of statutory PTD under R.C. 4123.58(C) is a weekly award for the life of the claimant. Moreover, because the employer here is a state-fund employer, an award of statutory PTD would necessarily be the burden of the state insurance fund, rather than the employer of record who failed to challenge the R.C. 4123.57(B) award.
 {¶ 44} In the magistrate's view, Restatement of the Law 2d, Judgments (1982) 273, Section 28, captioned "Exceptions to the General Rule of Issue Preclusion" presents relevant law. It states in part:
Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action[.]
 {¶ 45} Here, the real party in interest against whom relator seeks to impose the doctrine of collateral estoppel is the state insurance fund. However, the state insurance fund could not, as a matter of law, have obtained review of the DHO's decision or finding that relator has "100% bilateral, total loss of sight" based upon the reports of Drs. Campole and Calloway. Thus, it would be inequitable to impose issue preclusion against the state insurance fund for statutory PTD based upon the DHO's finding.
 {¶ 46} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.